**UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA**

| | |
|---|---|
| Park State Bank, | Civil No. 19-2438 (DWF/LIB) |
| Plaintiff, | |
| v. | **FINDINGS OF FACT, CONCLUSIONS OF LAW, AND ORDER FOR ENTRY OF DEFAULT JUDGMENT** |
| Duluth Steel Fabricators, Inc., et al., | |
| Defendants. | |

**INTRODUCTION**

This matter is before the Court on the amended motion of plaintiff Park State Bank ("Bank" or "Plaintiff") for entry of default judgment against defendants Duluth Steel Fabricators, Inc. ("DSF"); Keith A. Youngren; R. Dale, Inc. ("RDI"); State of Minnesota, Department of Revenue; Brown-Campbell Co.; Express Employment Professionals; Infra-Metals Co.; Heeg Ag Services, LLC; The Sherwin-Williams Company; Triad Metals, Inc.; Praxair Distribution, Inc.; State of Minnesota, Department of Labor and Industry, Occupational Safety and Health Division; Shingobee Builders, Inc.; Bougalis Construction, Inc.; Gleason Construction, Inc.; and Range Credit Bureau, Inc. (together, the "Non-Answering Defendants") in accordance with Federal Rule of Civil Procedure 55(b)(2).

At issue is how to dispose, and distribute the proceeds from the sale, of the real and personal property belonging to DSF. Bank initiated this action in state court, alleging that DSF defaulted on the terms of certain loan agreements and seeking to foreclose on

mortgages and commercial security agreements that Bank holds on DSF's real and personal property. The United States is a named defendant because it holds federal tax liens that encumber the property at issue. The United States removed the action to this Court, answered Bank's complaint, and counterclaimed to enforce the federal tax liens. (Doc. No. 9.) The United States now opposes, in part, Plaintiff's motion for entry of default judgment.

Based on the stated findings of fact and conclusions of law, the Court grants in part and denies in part the motion. The Court sets forth reasons for the partial denial of the motion in the Memorandum below.

## FINDINGS OF FACT

### Bank's Loan 4400 to DSF and the First Mortgage

1. On or about December 20, 2013, defendant Duluth Steel Fabricators, Inc. ("DSF") executed a Universal Note payable in favor of Bank in the original principal amount of $248,210.34, plus interest thereon at the stated rate, payable according to the terms and conditions therein, as modified by Commercial Debt Modification Agreements dated January 23, 2015, September 20, 2017, March 8, 2018, July 31, 2018 and April 29, 2019 (collectively, "Note 4400").

2. Security for repayment of Note 4400 includes a Mortgage executed by DSF in favor of Bank dated November 29, 2006, recorded on December 7, 2006, as Document No. 01037353, in the office of the St. Louis County Recorder (the "First Mortgage").

3. The First Mortgage encumbers real property owned by DSF that is located in St. Louis County, Minnesota and legally described as:

>Lots 5, 6, 7, 8, 9, 10, 11, 12, 13, 14, 15 and 16, inclusive, Block 107, all of Block 108, except railroad right of way, and that part of Lots 9, 10 and 11, in Block 109, lying Northerly of the former right of way of Duluth Incline Railway Company, all in West Duluth, Fourth Division, according to the recorded plat thereof on file and of record in the office of the Register of Deeds in and for said county and state, St. Louis County, Minnesota.

(the "DSF Property").

4. On August 8, 2019, a Notice of Lis Pendens relating to the DSF Property was recorded in the Office of the St. Louis County Recorder as Document No. 01360321.

5. Security for repayment of Note 4400 also includes Commercial Security Agreements executed by DSF in favor of Bank dated November 29, 2006, May 28, 2010, July 26, 2010, October 5, 2011, November 9, 2012 and December 20, 2013 (collectively, the "Note 4400 Security Agreement"), pledging to Bank a security interest in certain personal property (the "Personal Property").

6. Bank perfected its security interest by filing with the Minnesota Secretary of State a UCC Financing Statement on November 29, 2006, as filing number 200614467415, as amended by a UCC Amendment filed June 9, 2011, as filing number 20112452646, and a UCC Financing Statement filed on December 31, 2013, as filing number 201335024411 (collectively, the "UCC Financing Statements"); Bank also filed a UCC-3 Continuation filed June 15, 2016, as filing number 892109700021.

7.      Additional assurance of repayment of Note 4400 includes the Guaranties of K. Youngren and RDI dated May 28, 2010, July 26, 2010, October 5, 2011, November 9, 2012 and December 20, 2013 (the "Note 4400 Guaranties").[1]

8.      DSF is in default of its obligations to Bank under Note 4400, the First Mortgage, and the Note 4400 Security Agreement for failure to pay Note 4400 when it matured on May 24, 2019, plus failure to pay real estate taxes when due, plus failure to provide proof of insurance coverage on the Property, and plus failure to provide Bank with updated financial information, and otherwise. Such default by DSF constitutes default by K. Youngren and RDI on the Note 4400 Guaranties.

9.      Although Bank provided DSF, K. Youngren, and RDI with notice of default and demand for payment, no amount thereof has been received.

10.     As of April 21, 2020, the amount due and owing Bank under Note 4400 was a principal balance of $130,500.81, plus accrued interest in the amount of $8,760.03, plus late charges in the amount of $180.08, for a total payoff balance on that date of $139,440.92, exclusive of attorneys' fees and costs incurred in collection. At the current rate, the daily accrual of interest for each day thereafter is $24.47.

### Bank's Loan 2400 to DSF and the Second Mortgage

11.     On or about December 19, 2014, DSF executed a Universal Note payable in favor of Bank in the original principal amount of $326,000.00, plus interest thereon at the

---

[1]     Note 4400, the First Mortgage, the Note 4400 Security Agreement, and the Note 4400 Guaranties may sometimes be referred to collectively as the "Note 4400 Related Documents."

4

stated rate, payable according to the terms and conditions therein, as modified by Commercial Debt Modification Agreements dated June 8, 2017, September 27, 2017, February 28, 2018, May 29, 2018, June 28, 2018, October 19, 2018, and April 29, 2019 (collectively, "Note 2400").

12. Security for repayment of Note 2400 includes a Mortgage on the DSF Property executed by DSF in favor of Bank dated September 9, 2011, recorded on September 16, 2011, as Document No. 01169600, in the office of the St. Louis County Recorder (the "Second Mortgage").

13. Paragraph 4 of the Second Mortgage identifies the debt secured by the Mortgage as "PROMISSORY NOTE DATED 9/9/11 IN THE AMOUNT OF $326,000.00 TO DULUTH STEEL FABRICATORS." However, due to a scrivener's error, paragraph 3 of the Second Mortgage stated that the "Maximum Obligation Limit" was "limited to a predetermined amount of $65,000.00."

14. Contrary to the statement in paragraph 3 of the Second Mortgage, it was the intention and agreement of DSF and Bank that the Second Mortgage secure the full amount of the Note 2400—specifically, $326,000.00—such that the "maximum obligation limit" in the Second Mortgage should have read "$326,000.00" and not $65,000.00.

15. The failure of the Second Mortgage to state the maximum obligation limit as intended and agreed upon by DSF and Bank (i.e., $326,000) was the result of the mutual mistake of DSF and Bank.

16. Security for repayment of Note 2400 also includes Commercial Security Agreements executed by DSF in favor of Bank dated September 9, 2011, November 9, 2012, December 20, 2013 and February 24, 2015 (collectively, the "Note 2400 Security Agreement"), pledging to Bank a security interest in the Personal Property.

17. Bank perfected its security interest by filing the UCC Financing Statements.

18. Additional assurance of repayment of Note 2400 includes the Guaranties of K. Youngren and RDI dated September 9, 2011, November 9, 2012 and December 20, 2013 (collectively, the "Note 2400 Guaranties").[2]

19. DSF is in default of its obligations to Bank under Note 2400, the Second Mortgage, and the Note 2400 Security Agreement for failure to pay Note 2400 when it matured on May 24, 2019, plus failure to pay real estate taxes when due, plus failure to provide proof of insurance coverage on the Property, and plus failure to provide Bank with updated financial information, and otherwise. Such default by DSF constitutes default by K. Youngren and RDI on the Note 2400 Guaranties.

20. As of April 21, 2020, the amount due and owing Bank under Note 2400 was a principal balance of $301,337.00, plus accrued interest in the amount of $20,886.29, for a total payoff balance on that date of $322,223.29, exclusive of attorneys'

---

[2]  Note 2400, the Second Mortgage, the Note 2400 Security Agreement, and the Note 2400 Guaranties may sometimes be referred to collectively as the "Note 2400 Related Documents."

fees and costs incurred in collection. At the current rate, the daily accrual of interest for each day thereafter is $50.23.

**Bank's efforts to protect its rights and remedies under the First Mortgage in relation to claims by BNSF Railway Company against DSF**

21.     As of May 8, 2020, BNSF Railway Company ("BNSF") was the owner of property that bisects the DSF Property. Part of the DSF Property lies east of the BNSF-owned property (the "BNSF Property") and part lies west of the BNSF Property.

22.     BNSF had leased the BNSF Property to DSF, and DSF had constructed a portion of its industrial building on the BNSF Property (the majority of the building is located on the DSF Property).

23.     On December 11, 2019, after DSF had stopped making lease payments to BNSF, BNSF filed two actions against DSF in Minnesota state court entitled *BNSF Railway Company vs. Duluth Steel Fabricators, Inc., et al.*, Court File No. 69DU-CV-19-3333 (the "Eviction Action") and *BNSF Railway Company vs. Duluth Steel Fabricators, Inc., et al.*, Court File No. 69DU-CV-19-3336 (the "Ejectment Action"). In the Eviction Action, BNSF sought to evict DSF from the BNSF Property based on DSF's alleged breach of the parties' lease. In the Ejectment Action, BNSF sought ejectment of DSF and all of its items of property (including its industrial building) from the BNSF Property, as well as money damages, also based on DSF's alleged breach of the parties' lease.

24.     Bank and its counsel became aware of the Eviction Action on January 3, 2020 due to a Writ of Recovery of Premises and Order to Vacate, which had been entered

by the court in the Eviction Action (the "Writ and Order"), being posted at the DSF Property.

25. The Writ and Order directed all occupants of *the DSF Property* to vacate the premises by 5:30 p.m. on January 3, 2020 or risk being removed by the St. Louis County Sheriff.

26. Alarmed by the sudden risk to its mortgage interests in the DSF Property and its ability to obtain an order of foreclosure of the First Mortgage in this action, on January 3, 2020, Bank filed in the Eviction Action a motion to quash the Writ and Order and allow Bank to intervene in the Eviction Action in order to protect its rights and remedies.

27. On January 7, 2020, the court in the Eviction Action entered an order temporarily staying the Writ and Order for the purpose of allowing Bank and BNSF to discuss a potential resolution.

28. After January 7, 2020, Bank's counsel engaged in multiple discussions with BNSF's counsel, and the parties have agreed in principal that Bank will purchase the BNSF Property for $45,889.89.

29. Bank submits that its purchase of the BNSF Property is necessary to protect Bank's mortgage interests in the DSF Property and its remedy of foreclosure because the DSF Property would not be marketable following foreclosure of the First Mortgage if BNSF continued to own property that bisects the DSF Property, including property on which DSF's industrial building is constructed.

30. Bank also submits that if DSF Property were unmarketable following Bank's foreclosure of the First Mortgage, the possibility would be significantly diminished for Bank and the United States to recover any money their respective liens on the DSF Property because the possibility of selling the DSF Property would likewise be significantly diminished.

31. In addition to attorney fees and the anticipated purchase price of the BNSF Property, Bank has incurred court costs and due-diligence costs, such as obtaining a survey of the BNSF Property and DSF Property, in its effort to protect its rights in the DSF Property and the remedies available to it under the First Mortgage.

**Bank's proof of damages, including fees, costs, and expenses of enforcing and protecting its rights and remedies**

32. According to the terms and conditions of the Note 4400 Related Documents and the Note 2400 Related Documents, Bank is entitled to recovery of its reasonable attorneys' fees and legal expenses and other fees and expenses incurred in collecting amounts due and owing Bank under such documents and otherwise enforcing or protecting its rights under such documents.

33. As of April 22, 2020, Bank has incurred $49,983.69 in attorneys' fees and costs in collecting the amounts due and owing Bank under Note 4400, the Note 4400 Guaranties, Note 2400, and the Note 2400 Guaranties, and in enforcing or protecting Bank's rights under the First Mortgage, the Second Mortgage, the Note 4400 Security Agreement, and the Note 2400 Security Agreement, which fees and costs are recoverable

by Bank under the attorney-fees provisions in the Note 4400 Related Documents and the Note 2400 Related Documents.

34. Based on the sworn affidavits of Bank's president and Bank's counsel filed in support of Bank's amended motion for entry of default judgment, and the exhibits attached to the affidavits, Bank has proved to a reasonable degree of certainty the damages, including attorneys' fees and other expenses, as of April 22, 2020, which it seeks to recover against DSF, K. Youngren, and RDI.

35. Bank claims that it will incur additional attorneys' fees, costs, and expenses after April 22, 2020, which it is entitled to recover against DSF, Keith A. Youngren, and R. Dale, Inc. under the First Mortgage, including but not limited to fees and expenses relating to Bank's purchase of the BNSF Property, including the $45,889.89 purchase price.

### The United States' tax liens

36. On the dates, for the tax periods, and in the amounts set forth below, a delegate of the Secretary of the Treasury made assessments against DSF for unpaid federal employment taxes (Forms 941), interest, and penalties in accordance with law. The table below reflects DSF's outstanding federal employment tax liabilities for these periods (including additional assessed and accrued interest and penalties, plus any collection fees, and less any payments or credits) as of September 3, 2019:

| **Tax period ended** | **Assessment date** | **Assessment amount** | **Balance due as of Sept. 3, 2019** |
|:---:|:---:|:---:|:---:|
| June 30, 2014 | 10/06/2014 | $60,363.54 | $10,083.89 |
| Sept. 30, 2014 | 01/05/2015 | $46,366.05 | $36,977.21 |

| | | | |
|---|---|---|---|
| Dec. 31, 2014 | 04/06/2015 | $65,327.22 | $18,596.11 |
| Sept. 30, 2017 | 03/19/2018 | $30,740.83 | $33,831.45 |
| Dec. 31, 2017 | 02/26/2018 | $20,157.16 | $25,269.12 |
| March 30, 2018 | 05/21/2018 | $17,485.01 | $21,954.75 |
| June 30, 2018 | 08/27/2018 | $21,646.88 | $17,707.73 |

Total Balance Due as of Sept. 3, 2019:     $164,420.26

37. On the dates and in the amounts set forth below, a delegate of the Secretary of the Treasury made assessments against DSF for unpaid federal employment tax, interest, and penalties in accordance with the law for tax year 2014. The table below reflects DSF's combined federal unemployment tax liability for 2014 (including the original and secondary assessments, additional assessed and accrued interest and penalties, plus collection fees, less any payments and credits) as of September 3, 2019:

| **Tax period ended** | **Assessment date** | **Assessment amount** | **Balance due as of Sept. 3, 2019** |
|---|---|---|---|
| 2014 | 04/13/2015 | $1,042.66 | $9,365.86 |
|  | 03/20/2017 | $7,181.79 |  |

Total Balance Due as of Sept. 3, 2019:     $9,365.86

38. The United States Internal Revenue Service gave DSF notice of the above assessments and made demands for payment on or about the dates of each assessment; however, DSF has failed to pay such liabilities and is indebted to the United States in the amount of $173,786.12 as of September 3, 2019, plus statutory additions accruing from and after that date.

39. On the dates and for the date periods set forth below, a delegate of the Secretary of the Treasury filed Notices of Federal Tax Liens with the Office of the St. Louis County Recorder regarding DSF's employment and unemployment tax liabilities:

11

*Federal employment tax*

| Tax period ended | Notice of federal tax lien filed |
|---|---|
| June 30, 2014 | December 4, 2015 |
| Sept. 30, 2014 | |
| Dec. 31, 2014 | |
| Sept. 30, 2017 | July 26, 2018 |
| Dec. 31, 2017 | |
| March 31, 2018 | |
| June 30, 2018 | November 5, 2018 |

*Federal unemployment tax*

| Tax year | Notice of federal tax lien filed |
|---|---|
| 2014 | December 4, 2015 (1st assessment) |
| 2014 | December 10, 2018 (2nd assessment) |

40.     On the dates and for the date periods set forth below, the IRS filed Notices of Federal Tax Liens with the Minnesota Secretary of State regarding DSF's employment and unemployment tax liabilities:

*Federal employment tax*

| Tax period ended | Notice of federal tax lien filed |
|---|---|
| June 30, 2014 | December 15, 2014 |
| Sept. 30, 2014 | February 12, 2015 |
| Dec. 31, 2014 | July 11, 2015 |
| Sept. 30, 2017 | July 26, 2018 |
| Dec. 31, 2017 | |
| March 31, 2018 | |
| June 30, 2018 | November 3, 2018 |

12

*Federal unemployment tax*

| Tax year | Notice of federal tax lien filed |
|---|---|
| 2014 | July 11, 2015 (1st assessment) |
| 2014 | December 8, 2018 (2nd assessment) |

**Failure to timely answer or otherwise respond to the Complaint**

41.     Bank filed the Summons and Complaint in this action in St. Louis County District Court on August 6, 2019.  *See* Complaint (Doc. No. 1-1).

42.     Proof of service of the Summons and Complaint on all defendants is filed in the Court's record.  *See* Affidavit of Service (Doc. No. 12).

43.     On September 9, 2019, defendant United States of America ("United States") removed the case to this Court.  *See* Notice of Removal (Doc. No. 1).

44.     On November 12, 2019, the United States filed its Answer and Counterclaim/Cross-claim (Doc. No. 9).

45.     On November 26, 2019, Bank filed its reply to the United States' counterclaim (Doc. No. 10).

46.     On March 25, 2020, the Court issued an order noting that all defendants other than the United States – i.e. DSF; Mark W. Youngren; Keith A. Youngren; RDI; Curtis Teberg; State of Minnesota, Department of Revenue; Brown-Campbell Co.; Express Employment Professionals; Infra-Metals Co.; Heeg Ag Services, LLC; The Sherwin-Williams Company; Triad Metals, Inc.; Praxair Distribution, Inc.; State of Minnesota, Department of Labor and Industry, Occupational Safety and Health Division; Shingobee Builders, Inc.; Bougalis Construction, Inc.; Gleason Construction, Inc.; Range

13

Credit Bureau, Inc.; and Daniel Bosh, as Chairman on behalf of the Steelworkers Pension Fund – had not yet responded to the Complaint despite more than 21 days having elapsed since they were served. *See* Order (Doc. No. 13) (the "March 25 Order").

47. On March 26, 2020, Bank filed a Notice of Voluntary Dismissal of Defendant Mark W. Youngren (Doc. No. 14).

48. Also on March 26, 2020, in accordance with the March 25 Order, Bank sent written notice to all defendants listed in the March 25 Order – other than Mark Youngren – that they were required to file responsive pleadings or move for an extension of time to do so within five business days of having received Bank's notice. *See* Affidavit of Mailing (Doc. No. 15).

49. On April 2, 2020, defendant Daniel Bosh, as Chairman on behalf of the Steelworkers Pension Fund ("Bosh") filed an application for an extension of time to respond to the Complaint (Doc. No.16), which the Court granted by order dated April 3, 2020 (Doc. No. 18).

50. On April 6, 2020, Bank filed its Application for Entry of Default against DSF; K. Youngren; RDI; State of Minnesota, Department of Revenue; Brown-Campbell Co.; Express Employment Professionals; Infra-Metals Co.; Heeg Ag Services, LLC; The Sherwin-Williams Company; Triad Metals, Inc.; Praxair Distribution, Inc.; State of Minnesota, Department of Labor and Industry, Occupational Safety and Health Division; Shingobee Builders, Inc.; Bougalis Construction, Inc.; Gleason Construction, Inc.; and Range Credit Bureau, Inc. (collectively, the "Non-Answering Defendants") (Doc. No. 19).

51. On April 10, 2020, the Clerk of Court entered default against the Non-Answering Defendants (Doc. No. 21).

52. On April 21, 2020, Bank, the United States, and Bosh filed a stipulation in which Bosh stipulated that any interest he may claim in the DSF Property or the Personal Property is subordinate to the liens of Bank and the United States in all such property (Doc. No. 22). The stipulation also establishes an order of priority regarding the respective liens of Bank and the United States in the DSF Property and Personal Property.

53. On April 22, 2020, Bank filed its application for entry of default judgment (Doc. No. 23). As part of its application, and because the promissory note that was the subject of Count III of the Complaint has been satisfied, Bank voluntarily dismissed Count III and defendant Curtis Teberg, one of the guarantors of that note.

54. More than 21 days have elapsed since the Non-Answering Defendants were served with the Summons and Complaint, and more than five business days have elapsed since Bank served written notice of the March 25 Order on the Non-Answering Defendants, and the Non-Answering Defendants have not answered or otherwise responded to the Complaint.

55. Because the foregoing facts are established as against the Non-Answering Defendants by such defendants' failure to deny allegations in the Complaint and the United States' Counterclaim/Crossclaim (*see* Fed. R. Civ. P. 8(b)(6)), by the affidavits submitted in support of Bank's application for entry of default judgment, and by other

15

documents in the Court's record, the Court finds that a hearing on Bank's application is unnecessary.

Based on the foregoing findings of fact, the Court now makes the following conclusions of law.

## **CONCLUSIONS OF LAW**

1. Having failed to answer or otherwise respond to the Complaint within the time required by Federal Rule of Civil Procedure 12(a)(1), as well as the time required by the March 25 Order, the Non-Answering Defendants are in default.

2. Entry of default judgment in favor of Bank and against the Non-Answering Defendants is warranted under Federal Rule of Civil Procedure 55(b)(2).

Based on the foregoing findings of fact and conclusions of law, the Court now makes the following order.

**IT IS HEREBY ORDERED** that:

1. Plaintiff's amended motion for entry of default judgment against defendants Duluth Steel Fabricators, Inc.; Keith A. Youngren; R. Dale, Inc.; State of Minnesota, Department of Revenue; Brown-Campbell Co.; Express Employment Professionals; Infra-Metals Co.; Heeg Ag Services, LLC; The Sherwin-Williams Company; Triad Metals, Inc.; Praxair Distribution, Inc.; State of Minnesota, Department of Labor and Industry, Occupational Safety and Health Division; Shingobee Builders, Inc.; Bougalis Construction, Inc.; Gleason Construction, Inc.; and Range Credit Bureau, Inc. [Doc. No. 32] is hereby **GRANTED**.

2. On Count I of the Complaint, plaintiff is hereby awarded default money judgments against Duluth Steel Fabricators, Inc., Keith A. Youngren, and R. Dale, Inc., jointly and severally, in the amount of $139,440.92, plus interest thereon at the daily rate of $24.47 from April 21, 2020 to the date of entry of judgment.

3. On Count II of the Complaint, plaintiff is hereby awarded default money judgments against Duluth Steel Fabricators, Inc., Keith A. Youngren, and R. Dale, Inc., jointly and severally, in the amount of $322,223.29, plus interest thereon at the daily rate of $50.23 from April 21, 2020 to the date of entry of judgment.

4. Bank is hereby awarded against Duluth Steel Fabricators, Inc., Keith A. Youngren, and R. Dale, Inc. a default money judgment of $49,983.69 (as of April 22, 2020) in reasonable attorneys' fees, costs, and expenses in accordance with the attorneys' fees, costs, and expenses provisions of the applicable loan documents.  Such amount, in accordance with the attorneys' fees, costs, and expenses provisions of the applicable loan documents, is added to the amounts due and owing Bank on the defaulted loans and is recoverable by Bank in this action.  Bank may apply to the Court for a future award of additional attorneys' fees, costs, and expenses which are recoverable by Bank under the loan documents and incurred by Bank after April 22, 2020, <u>but not including the purchase price of the BNSF Property</u>.

Dated:  November 3, 2020                    s/Donovan W. Frank
                                            DONOVAN W. FRANK
                                            United States District Judge

**MEMORANDUM**

There is no dispute that the United States is not in default. The United States opposes, in part, relief sought by Bank to the extent that such relief will prejudice its interests. Specifically, the United States objects to the following portions of Bank's motion: (1) allowing Bank to take immediate possession of and sell the property involved in this action and described above; and (2) allowing the costs of a separate lawsuit be included and given priority over the federal tax liens as part of Bank's mortgage lien in the real property.

Bank and the United States stipulated to certain facts and resolved certain issues between them. (Doc. No. 22.) For example, Bank and the United States agreed that each has valid lien interests in the Duluth Property and the Personal Property, and that their respective interests may be enforced and these properties may be sold in this action. (*Id.* ¶¶ 14, 20.) They also stipulated to the relative priority of their respective interests. (*Id.* ¶¶ 13, 19.) Bank and the United States, however, did not stipulate as to the method or procedures that should be followed in the sale of the Duluth and Personal Property, or to the correct value of the respective lien interests.

In addition, the United States argues that Bank is not entitled to a judgment that the costs of intervening in the BNSF Lawsuit be included and given priory with the First Mortgage in the Duluth Property. The United States correctly points out Bank did not supplement its complaint or assert a claim for the new costs associated with the BNSF lawsuit be included in the value of the mortgage it seeks to foreclose.

Because the United States remains a party in the case, no final judgment has been entered adjudicating all claims in the case, and the case involved property in which the United States holds a lien interest, the sale pursuant to federal law by an order of the Court would be premature. *See* 28 U.S.C. § 2410(c); 26 U.S.C. § 7403(c); 28 U.S.C. § 2201. While entry of default is appropriately entered against the non-appearing parties, the Court will not enter final judgment against all defendants. Nor will the Court order the sale of DSF's property. Instead, the United States will be permitted to take discovery on unresolved factual issues between it and Bank, such as the extent and the value of DSF's Personal Property. In addition, the Court denies the portion of Bank's motion insofar as it seeks a determination that the costs of the BNSF Lawsuit may be included in the value of the First Mortgage in the Duluth Property. No claim for these costs has been pleaded and, therefore, they are not covered by the default judgment.

D.W.F.