**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

Park State Bank,                                        Civil No. 19-2438 (DWF/LIB)

        Plaintiff,

v.                                                             **FINDINGS OF FACT**
                                                               **CONCLUSIONS OF LAW**
Duluth Steel Fabricators, Inc.,                                **AND ORDER FOR ENTRY**
et al.,                                                        **OF DEFAULT JUDGMENT**

        Defendants.


        This matter was heard before the undersigned on March 18, 2022 upon Plaintiff

Park State Bank's ("Bank" or "plaintiff") Motion for Default Judgment on Counts IV, V,

VI, and VII of the Complaint against defendants Duluth Steel Fabricators, Inc.; Keith A.

Youngren; R. Dale, Inc.; State of Minnesota, Department of Revenue; Brown-Campbell

Co.; Express Employment Professionals; Infra-Metals Co.; Heeg Ag Services, LLC; The

Sherwin-Williams Company; Triad Metals, Inc.; Praxair Distribution, Inc.; State of

Minnesota, Department of Labor and Industry, Occupational Safety and Health Division;

Shingobee Builders, Inc.; Bougalis Construction, Inc.; Gleason Construction, Inc.; and

Range Credit Bureau, Inc.  (Doc. No. 59.)

        Having considered the motion and supporting papers and based upon on all the

files, records, and proceedings herein, the Court makes the following findings of fact.

## FINDINGS OF FACT

### Bank's Loan 4400 to Duluth Steel Fabricators, Inc. and the First Mortgage

1.      On or about December 20, 2013, defendant Duluth Steel Fabricators, Inc. ("DSF") executed a Universal Note payable in favor of Bank in the original principal amount of $248,210.34, plus interest thereon at the stated rate, payable according to the terms and conditions therein, as modified by Commercial Debt Modification Agreements dated January 23, 2015, September 20, 2017, March 8, 2018, July 31, 2018 and April 29, 2019 (collectively, "Note 4400").

2.      Security for repayment of Note 4400 includes a Mortgage executed by DSF in favor of Bank dated November 29, 2006, recorded on December 7, 2006, as Document No. 01037353, in the office of the St. Louis County Recorder (the "First Mortgage").

3.      The First Mortgage encumbers real property owned by DSF that is located in St. Louis County, Minnesota and legally described as:

> Lots 5, 6, 7, 8, 9, 10, 11, 12, 13, 14, 15 and 16, inclusive,
> Block 107, all of Block 108, except railroad right of way, and
> that part of Lots 9, 10 and 11, in Block 109, lying Northerly
> of the former right of way of Duluth Incline Railway
> Company, all in West Duluth, Fourth Division, according to
> the recorded plat thereof on file and of record in the office of
> the Register of Deeds in and for said county and state, St.
> Louis County, Minnesota.

(the "Real Property").

4.      On August 8, 2019, a Notice of Lis Pendens relating to the Real Property was recorded in the Office of the St. Louis County Recorder as Document No. 01360321.

5.      Security for repayment of Note 4400 also includes Commercial Security

Agreements executed by DSF in favor of Bank dated November 29, 2006, May 28, 2010,

July 26, 2010, October 5, 2011, November 9, 2012 and December 20, 2013 (collectively,

the "Note 4400 Security Agreement"), pledging to Bank a security interest in certain

personal property, including, without limitation, all of DSF's inventory, equipment,

furniture, fixture, machinery, and all other business assets (the "Personal Property").

6.      Bank perfected its security interest by filing with the Minnesota Secretary

of State a UCC Financing Statement on November 29, 2006, as filing number

200614467415, as amended by a UCC Amendment filed June 9, 2011, as filing number

20112452646, and a UCC Financing Statement filed on December 31, 2013, as filing

number 201335024411; Bank also filed a UCC-3 Continuation filed June 15, 2016, as

filing number 892109700021 (collectively, the "UCC Financing Statements").

7.      Additional assurance of repayment of Note 4400 includes the Guaranties of

defendants Keith A. Youngren ("K. Youngren") and R. Dale, Inc. ("RDI") dated May 28,

2010, July 26, 2010, October 5, 2011, November 9, 2012 and December 20, 2013.

8.      DSF defaulted on its obligations to Bank under Note 4400, the First

Mortgage, and the Note 4400 Security Agreement for failure to pay Note 4400 when it

matured on May 24, 2019 and otherwise.

**Bank's Loan 2400 to Duluth Steel Fabricators, Inc. and the Second Mortgage**

9.      On or about December 19, 2014, DSF executed a Universal Note payable in

favor of Bank in the original principal amount of $326,000.00, plus interest thereon at the

stated rate, payable according to the terms and conditions therein, as modified by

3

Commercial Debt Modification Agreements dated June 8, 2017, September 27, 2017,

February 28, 2018, May 29, 2018, June 28, 2018, October 19, 2018, and April 29, 2019

(collectively, "Note 2400").

10.     Security for repayment of Note 2400 includes a Mortgage on the Real

Property executed by DSF in favor of Bank dated September 9, 2011, recorded on

September 16, 2011, as Document No. 01169600, in the office of the St. Louis County

Recorder (the "Second Mortgage").

11.     Paragraph 4 of the Second Mortgage identifies the debt secured by the

Mortgage as "PROMISSORY NOTE DATED 9/9/11 IN THE AMOUNT OF

$326,000.00 TO DULUTH STEEL FABRICATORS."  However, due to a scrivener's

error, paragraph 3 of the Second Mortgage stated that the "Maximum Obligation Limit"

was "limited to a predetermined amount of $65,000.00."

12.     Contrary to the statement in paragraph 3 of the Second Mortgage, there is

clear and convincing evidence, shown by the sworn declarations of DSF's president

Mark W. Youngren and Bank's former Vice President John Conley, that it was the

intention and agreement of DSF and Bank that the Second Mortgage secure the full

amount of the Note 2400—specifically, $326,000.00—such that the "maximum

obligation limit" in the Second Mortgage should have read "$326,000.00" and not

$65,000.00.

13.     The Youngren and Conley declarations are clear and convincing evidence

that the failure of the Second Mortgage to state the maximum obligation limit as intended

4

and agreed upon by DSF and Bank (i.e., $326,000) was the result of the mutual mistake of DSF and Bank.

14.     Security for repayment of Note 2400 also includes Commercial Security Agreements executed by DSF in favor of Bank dated September 9, 2011, November 9, 2012, December 20, 2013 and February 24, 2015 (collectively, the "Note 2400 Security Agreement"), pledging to Bank a security interest in the Personal Property.

15.     Bank perfected its security interest by filing the UCC Financing Statements.

16.     Additional assurance of repayment of Note 2400 includes the Guaranties of K. Youngren and RDI dated September 9, 2011, November 9, 2012 and December 20, 2013.

17.     DSF defaulted on its obligations to Bank under Note 2400, the First Mortgage, and the Note 2400 Security Agreement for failure to pay Note 4400 when it matured on May 24, 2019 and otherwise.

**Bank files this action, the United States removes it
to this Court, and partial default judgment is entered.**

18.     On August 6, 2019, Bank filed the Complaint in the District Court of St. Louis County in the State of Minnesota, seeking the following relief:

a.     On Counts I and II, entry of money judgments against DSF, K. Youngren, and RDI based on payment defaults under Note 2400 and Note 5600 and the guaranties of such notes;

5

b.      On Count IV, a judgment for foreclosure of the First Mortgage and directing the sale of the Real Property and Personal Property by the Sheriff of St. Louis County in accordance with Minnesota law, and barring any defendants or anyone claiming through them from any equity of redemption or interest in the Real Property other than the right to redeem as provided by law;

c.      On Count V, a judgment reforming the Second Mortgage, *nunc pro tunc*, so that the maximum obligation secured by the Second Mortgage is $326,000.00;

d.      On Count VI, awarding Bank immediate possession of the Personal Property; and

e.      On Count VII, a determination that Bank's interest in the Real Property is senior and prior to the interest claimed by any of the defendants or anyone claiming through them, and that Bank's interest in the Personal Property is senior and prior to the interest claimed by any of the defendants or anyone claiming through them, other than the United States.

19.     Bank originally named Mark W. Youngren and Curtis Teberg as additional defendants, but later voluntarily dismissed Mark Youngren and Teberg and its claim against Teberg (Count III of the Complaint).

20.     On September 9, 2019, the United States removed the case to this Court due to the existence of federal tax liens against the Real Property and Personal Property.

21.     On November 12, 2019, the United States filed its Answer and Counterclaim/Crossclaim, seeking judgment determining the priority of federal tax liens

against the Real Property and Personal Property vis-à-vis the liens of all other parties and

enforcing the tax liens based on such priority.

22.     On March 25, 2020, the Court issued an order (a) noting that certain

defendants[1], as well as defendants Mark Youngren, Teberg, and Bosh, had not yet

responded to the Complaint despite more than 21 days having elapsed since they were

served, (b) directing Bank to notify such defendants within three days that they are

required to file responsive pleadings or move for an extension of time to do so; and

(c) directing Bank to file an application for default against defendants who failed to file

responsive pleadings within five business days of having been given notice by Bank to do

so (the "March 2020 Order").

23.     Bank provided the notice required by the March 2020 Order, but none of

the Non-Answering Defendants thereafter filed responsive pleadings or moved for an

extension of time to do so.

24.     On April 6, 2020, Bank filed an Application for Default against the Non-

Answering Defendants.

25.     On April 10, 2020, the Clerk of Court entered default against the Non-

Answering Defendants.

---

[1]     Defendants DSF; K. Youngren; RDI; State of Minnesota, Department of Revenue; Brown-Campbell Co.; Express Employment Professionals; Infra-Metals Co.; Heeg Ag Services, LLC; The Sherwin-Williams Company; Triad Metals, Inc.; Praxair Distribution, Inc.; State of Minnesota, Department of Labor and Industry, Occupational Safety and Health Division; Shingobee Builders, Inc.; Bougalis Construction, Inc.; and Range Credit Bureau, Inc. (collectively, the "Non-Answering Defendants").

26.     On April 21, 2020, Bank, the United States, and defendant Daniel A. Bosh (who was named as a defendant solely in his capacity as Chairman on behalf of the Steelworkers Pension Fund) filed a joint stipulation ("Stipulation"), under which Bosh stated he does not claim any interest in the Real Property or Personal Property, and Bank and the United States agreed to the order of priority of their liens in the Real Property and Personal Property.

27.     On April 22, 2020, Bank filed a motion for entry of default judgment seeking, in part, money judgments on Counts I and II of the Complaint, a judgment entitling Bank to foreclose the First Mortgage and take immediate possession of the Personal Property (Counts IV and VI), a judgment reforming the Second Mortgage (Count V), and an award of attorneys' fees, costs, and disbursements against DSF, K. Youngren, and RDI.  Bank also requested that the Court direct that the proceeds of the sale of the Real Property and Personal Property following foreclosure be distributed to Bank and the United States in the order of priority provided in the Stipulation.

28.     On May 8, 2020, Bank filed an amended motion for default judgment to request recovery of additional attorneys' fees and expenses against DSF, K. Youngren, and RDI, which Bank had incurred in intervening and defending its rights in the Real Property in two lawsuits filed by BNSF Railway against DSF in Minnesota state court based on DSF's default under a lease (the "BNSF Lawsuits").

29.     On June 12, 2020, the United States filed a partial opposition to Bank's amended motion, in which the United States limited its opposition to: (a) Bank's request that it be allowed to immediately begin foreclosure of the First Mortgage under

Minnesota law, arguing the Court should instead exercise discretion afforded under

28 U.S.C. §§ 2001 and 2410(c) to set terms and conditions of the foreclosure that would

"adequately protect the government's interests"; and (b) Bank's request for attorneys'

fees and expenses incurred in connection with the BNSF Lawsuits.

30.     On November 13, 2020, the Court entered its Amended Findings of Fact,

Conclusions of Law, and Order for Entry of Default Judgment ("November 2020 Order")

(Doc. No. [48]), in which it granted Bank's motion in part.  Specifically, the Court

directed entry of default judgment in favor of Bank and against the Non-Answering

Defendants, awarded Bank money judgments against DSF, K. Youngren, and RDI on

Counts I and II of the Complaint, and awarded Bank attorneys' fees, costs, and expenses

of $49,983.69 against DSF, K. Youngren, and RDI. Judgment was entered November 17,

2020 (Doc No. [49]).

31.     However, the Court did not direct any action in the November 2020 Order

as to Bank's claims in Counts IV, V, VI, and VII of the Complaint, noting:

> ***Because the United States remains a party in the case***, no
> final judgment has been entered adjudicating all claims in the
> case, and the case involved ***property in which the United
> States holds a lien interest***, the sale [of which] pursuant to
> federal law by an order of the Court would be premature. *See*
> 28 U.S.C. § 2410(c); 26 U.S.C. § 7403(c); 28 U.S.C. § 2201.

**Bank and the United States reach a settlement.**

32.     On January 24, 2022, Bank and the United States filed a Joint Notice of

Settlement, stating that they had reached a settlement agreement regarding the United

States' lien enforcement claims against the real property and personal property at issue in

this matter and would file concurrent motions to (a) dismiss the United States as a party

defendant to Bank's Complaint, and (b) dismiss without prejudice the United States'

Counterclaim/Crossclaim.

33.     On January 25, 2022, Bank and the United States served and filed their

respective motions to dismiss (Doc. Nos. [51, 54]), and the Bank additionally moved for

default judgment against the Non-Answering Defendants on Counts IV, V, VI, and VII of

the Complaint (Doc. No. [59]).

34.     The Court granted Bank's and the United States' unopposed motions to

dismiss.  (Doc. No. 70.)

### Supplemental jurisdiction over Bank's remaining state-law claims

35.     After more than two years of jurisdiction over this action, and based on

considerations of judicial economy, fairness, convenience, and comity, it is appropriate

for this Court, notwithstanding the dismissals of the United States and its

Counterclaim/Crossclaim, to retain jurisdiction over Bank's state-law claims.

Based on the foregoing findings of fact, the Court now makes the following

conclusions of law.

### CONCLUSIONS OF LAW

1.     With dismissals of the United States' Counterclaim/Crossclaim and of the

United States as a party defendant, the basis on which the Court denied in part Bank's

motion for default judgment in the November 2020 Order is eliminated.

2.      Having failed to answer or otherwise respond to the Complaint within the time required by Fed. R. Civ. P. 12(b)(1), as well as the time required by the March 2020 Order, the Non-Answering Defendants are in default.

3.      Entry of default judgment in favor of Bank and against the Non-Answering Defendants on Counts IV, V, VI, and VII of the Complaint is warranted under Fed. R. Civ. P. 55(b)(2).

Based on the foregoing findings of fact and conclusions of law and on all the files, records, and proceedings herein, and the Court otherwise being duly advised of the record, **IT IS HEREBY ORDERED** that:

1.      Plaintiff's motion for entry of default judgment on Counts IV, V, VI, and VII of the Complaint against defendants Duluth Steel Fabricators, Inc. ("DSF"); Keith A. Youngren; R. Dale, Inc.; State of Minnesota, Department of Revenue; Brown-Campbell Co.; Express Employment Professionals; Infra-Metals Co.; Heeg Ag Services, LLC; The Sherwin-Williams Company; Triad Metals, Inc.; Praxair Distribution, Inc.; State of Minnesota, Department of Labor and Industry, Occupational Safety and Health Division; Shingobee Builders, Inc.; Bougalis Construction, Inc.; Gleason Construction, Inc.; and Range Credit Bureau, Inc. (Doc. No. [59]) is **GRANTED**.

2.      On Count IV of the Complaint, Plaintiff is hereby awarded a judgment of foreclosure against DSF.  Plaintiff is entitled to have the following described property sold by the Sheriff of St. Louis County, Minnesota according to the law for the sale of real estate on execution as provided by Minnesota Statutes chapter 581, to satisfy the

11

amounts adjudged to be due in the Court's prior Judgment in this case (Doc. No. [49]),

and to make a report of sale to this Court:

> Lots 5, 6, 7, 8, 9, 10, 11, 12, 13, 14, 15 and 16, inclusive,
> Block 107, all of Block 108, except railroad right of way, and
> that part of Lots 9, 10 and 11, in Block 109, lying Northerly
> of the former right of way of Duluth Incline Railway
> Company, all in West Duluth, Fourth Division, according to
> the recorded plat thereof on file and of record in the office of
> the Register of Deeds in and for said county and state, St.
> Louis County, Minnesota.

(the "Real Property").

3.      Notice of the sale of shall be given as required, if at all, by Minnesota

Statutes chapter 581.

4.      On Count V of the Complaint, paragraph 3 of the mortgage encumbering

the Real Property executed by DSF in favor of Plaintiff on September 9, 2011 and

recorded in the Office of the St. Louis County Recorder on September 16, 2011 as

Document No. 01169600 is hereby reformed, *nunc pro tunc*, to state:

> **3.  MAXIMUM OBLIGATION LIMIT.  [X]**
> Notwithstanding anything to the contrary herein, enforcement
> of this Security Instrument is limited to a predetermined debt
> amount of $326,000.00 under chapter 287 of Minnesota
> Statutes.  [ ]  This Security Instrument secures an
> indeterminate amount and the mortgage registration tax will
> be paid according to chapter 287 of Minnesota Statutes.
>
> Additional amounts secured by this Security Instrument
> include interest and any other amount advanced by Lender
> ion protection of the Property or this Security Instrument but
> not limited to taxes, assessments, charges, claims, fines,
> impositions, insurance premiums, amounts due under prior or
> superior mortgages and other prior or superior liens,
> encumbrances and interests, legal expenses and attorneys'
> fees.

5.      On Count VI of the Complaint, Plaintiff is hereby awarded immediate possession of all of the Personal Property.  Plaintiff is entitled to have the Personal Property sold as one unit with the Real Property to satisfy the amounts adjudged to be due in the Court's prior Judgment in this case (Doc. No. [49]).

6.      On Count VII of the Complaint, Plaintiff is hereby awarded judgment against all remaining defendants and all persons claiming through them that they are forever barred and foreclosed of any right, title, interest, and equity of redemption in and to the Real Property and/or the Personal Property, excepting only the right to redeem allowed by statute for six months from the date of the order confirming sale made under and by virtue of this judgment.

7.      The Court hereby retains jurisdiction for purposes of adjudicating matters involving the mortgage foreclosure authorized above under Minnesota Statutes chapter 581.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

Dated:  March 18, 2022                              s/Donovan W. Frank
                                                    DONOVAN W. FRANK
                                                    United States District Judge

13